UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VIVIAN JOHNSON, | : | |
| Plaintiff | : | CIVIL ACTION NO. |
| | : | 3:05-CV-139(JCH) |
| v. | : | |
| | : | |
| SEARS ROEBUCK & CO., | : | AUGUST 29, 2007 |
| Defendant. | : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. NO. 127]**

**I.      INTRODUCTION**

Vivian Johnson, a pro se plaintiff, brings this action against the defendant, Sears Roebuck & Co ("Sears"), for damages she sustained from a furnace that Sears allegedly installed improperly in her home.

Sears has filed a Motion for Summary Judgment [Doc. No. 127] as to all of Johnson's claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**II.     STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all

1

inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

### III. FACTUAL BACKGROUND[1]

On or about August 31, 1999, Johnson purchased a Kenmore oil furnace from Sears, which was installed in September. See Def.'s Loc.R.Civ.P. 56(a)1 Statement ("Def.'s Stat.") at Ex. H, Plf.'s More Definite Statement Revised November 10, 2005 ("Revised Statement") at ¶ 4 [Doc. No. 127]. At the time of purchase, Johnson and Sears entered into a Master Protection Agreement ("MPA") for an additional three years of coverage on her furnace. Id. at Ex. 3, Master Protection Plan ("MPA").

On September 15, 1999, Johnson complained that the furnace was leaking water and making noise, and a Sears technician came to her home to investigate. Id. at Ex. H, Plf.'s Revised Statement at ¶ 4. The technician told Johnson that the problem was not the furnace, because an oil furnace does not have water in it. Id. at Ex. A, Johnson's Dep. at 184. Johnson claims the technician told her it was the water

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving plaintiff, where there is evidence to support her allegations.

2

heater that was leaking,[2] and he fixed it at no expense to Johnson; however, Johnson made numerous calls thereafter to Sears complaining that the problem still existed. Id. at 181. According to Johnson, a Sears representative came in September 2003 and told her that it was a pre-existing humidifier that was leaking water. Johnson believed the humidifier was part of the furnace, because when the furnace was installed Sears representatives detached and reattached it without asking for her permission. See Plf.'s Memorandum in Opposition ("Mem. in Opp.") at 3 [Doc. No. 130].

Johnson filed this lawsuit on January 25, 2005, alleging that Sears violated her human rights; violated her Fourteenth Amendment right to due process; breached a contract; breached a warranty; violated the Lemon Law; and was negligent.

## IV. DISCUSSION

### A. Jurisdictional Amount

Sears argues that Johnson cannot prove the requisite minimum amount in controversy, which is $75,000. See Def.'s Mem. in Supp. at 13. Under the law of this Circuit, "[a] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir.1994). In determining whether a plaintiff satisfies this amount in controversy requirement, the court looks only to the damages that the plaintiff claims

---

[2]In its Memorandum in Support of Summary Judgment ("Mem. in Supp."), at 2, Sears claims that the technician told Johnson that the water was coming from the humidifier and a condensate pipe from the central air conditioner that was located above the furnace. However, Sears has failed to attach page 219 of Johnson's deposition testimony in which she allegedly testified to this; thus, the court cannot rely on this information.

were caused by the defendant, not to whether the plaintiff can show that the defendant caused those damages. See United Food & Commercial Workers Union, Local 919 v. Centermark Properties of Meriden Square, 30 F.3d 298, 305-06 (2d Cir. 1994). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Tongkook, 14 F.3d at 784.

Johnson has claimed damages for time lost from work, aggravation, medical complications, legal expense, damage to sentimental items, increased oil expenses, and violation of her human rights. See Def.'s Stat. at Ex. A, Johnson Dep. at 268. While at least the last of this list of damages is uncertain, nonetheless "the doubt should be resolved in favor of the plaintiff's pleadings." Tongkook, 14 F.3d at 785. Moreover, while the court has serious questions with respect to whether Johnson has incurred damages over $75,000, the court cannot say to a legal certainty that, if Johnson prevailed on her claims the damages would be less than $75,000.

**B.    Due Process**

Sears asserts that Johnson's claim that her Fourteenth Amendment right to due process of law has been violated was withdrawn by Johnson at her deposition. See Def.'s Mem. in Supp. at 13. The court agrees. In her sworn deposition testimony, Johnson testified that she wanted to litigate her case in federal court rather than through arbitration, and that her Fourteenth Amendment claim had been premised on her belief that she would have to arbitrate this matter in a state other than Connecticut, which would be difficult for her. See Def.'s Stat. at Ex. A, Johnson Dep. at 163. Because that was no longer an issue, Johnson admitted that her Fourteenth

4

Amendment claim was withdrawn.³  Thus, Johnson cannot now create an issue of fact by contradicting her prior sworn deposition testimony.  C.f. Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir.1969) ("[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").  In fact, Johnson has presented no evidence, other than her argument in her Memorandum in Opposition, see Mem. in Opp. at 27, that would support her assertion that she has not given up her Fourteenth Amendment claim.  A memorandum of law is not evidence, Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) ("'[Mere conclusory allegations or denials' in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citations omitted). Therefore, Johnson's Fourteenth Amendment due process claim will be considered withdrawn by the court.⁴

---

³The following exchange occurred between Johnson and counsel for Sears:
| | |
|---|---|
| Defense counsel: | "So you're no longer pursuing that, your rights under the 14th Amendment?" |
| Johnson: | "Right." |
| Defense counsel: | "Okay.  You're withdrawing that claim?" |
| Johnson: | "Yes." |
| Defense counsel: | "So Paragraph 2 of your More Definite Statement is withdrawn?" |
| Johnson: | "Yes." |
| Defense counsel: | "Okay." |
| Johnson: | "Thank you." |

⁴Even if the court assumed Johnson had not withdrawn her Fourteenth Amendment claim, the court still would grant summary judgment to the defendants, because Johnson has provided no evidence that would create an issue of fact regarding this claim.  Because she is currently proceeding in a court of law, it does not appear that Johnson's "rights to a fair trial that is judge [sic] by her peers, in a court of law," are being denied.  See Plf.'s Stat. at ¶ 1.

### C. Breach of Contract

To prove her breach of contract claim, Johnson must establish: "(1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the opposing party and (4) damages." <u>McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.</u>, 93 Conn. App. 486, 503-4 (Conn. App. Ct. 2006). Moreover, "a plaintiff must prove that he or she sustained damages as a direct and proximate result of the defendant's breach." <u>Warning Lights and Scaffold Service, Inc. v. O and G Industries, Inc.</u>, 102 Conn. App. 267, 271 (Conn. App. Ct. 2007). Indeed, "causation is an element–and a crucial one–of the plaintiff's prima facie case.'" <u>McCann</u>, 93 Conn. App. at 504 (citations omitted).

There is no dispute that Sears and Johnson entered into two agreements on or around August 31, 1999. <u>See</u> Def.'s Mem. in Supp. at 19. Johnson claims that Sears failed to honor the contracts because a technician never responded to her complaints. <u>See</u> Def.'s Stat. at Ex. H, Plf.'s Revised Statement at ¶ 5. However, in her sworn deposition testimony, Johnson admitted that approximately two weeks after the furnace was installed, a Sears technician told her that the furnace could not leak water and that it was her water heater or humidifier that was leaking water. <u>Id.</u> at Ex. A, Johnson Dep. at 184. These latter items are not covered by the agreements.

The Heating/Cooling Estimate and Proposal that Johnson signed on August 31, 1999, regarding her purchase of the furnace specifically states that, "Sears is not responsible for any existing code violations or pre-existing conditions of any ductwork, piping, electrical supplies or equipment not being replaced at this time. If additional work is required, it will be the customer's responsibility." <u>See</u> Def.'s Stat. at Ex. E.

Furthermore, the MPA entered into on that same date only applies to "covered products" and limits liability on "telephone, water, gas, electrical or other lines, drains, or ductwork connecting to the equipment." See Def.'s Stat. at Ex. D, MPA at ¶¶ 1, 10(h). It also limits liability to Sears' agents, contractors, or licensees "for any incidental or consequential damages, including, but not limited to, property damage, lost time, loss of use of covered product(s) or any other damages resulting from the breakdown or failure of covered product(s) serviced under this MPA, delays in servicing or the inability to service any covered product(s)." Id. at ¶ 11.

These agreements show that, to the extent Sears technicians told Johnson it was the water heater or humidifier or air conditioner that was leaking water, these items were not covered by the MPA and thus Sears was not responsible for fixing them. Moreover, Sears argues that Johnson has failed to establish her breach of contract claim because there is no evidence that Sears breached the agreement and directly and proximately caused damages. See Mem. in Supp. at 19. Indeed, Johnson has pointed to no evidence that would indicate that it was the furnace, rather than these other items, that caused the leaking of the water in her basement; as a matter of fact, she was told by several people that the furnace does not contain water. For example, James Anderson of Viking Fuel Oil, whose technicians stopped the water leaking from the humidifier, told her as much in a telephone conversation with Johnson, in which he also told her that the humidifier is not part of the furnace and that a humidifier needs ongoing maintenance in order to stay free of problems. See Def.'s Stat. at Ex. F, Anderson Dep. at 21, 47-49. Timothy Kennedy of Kennedy Plumbing and Heating, whose technicians went to Johnson's home to inspect for leaks, testified that it was the

condensate fitting of the air conditioner above the furnace, which was broken, that caused the leaking, not the furnace. Id. at Ex. G, Kennedy Dep. at 13.

Because Johnson has provided no evidence, through expert testimony or otherwise, that would show that Sears breached the contract or that Sears' improper installation or maintenance of the furnace caused the water to leak in her basement, the court grants summary judgment to Sears on its breach of contract claim.

### D. Breach of Warranty

Sears argues that Johnson's breach of warranty claim must be brought under Connecticut's Product Liability Act ("CPLA") because her claim arises out of the installation of the furnace she purchased from Sears. See Def.'s Mem. in Supp. at 21. The court agrees, because Johnson's claim is premised on the "improper and defective installation" of the furnace. See Def.'s Stat. at Ex. H, Plf.'s Revised Statement at ¶ 5; see also Conn. Gen. Stat. § 52-572m(b).

The CPLA creates a consolidated cause of action for all product liability claims, which "shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." Conn. Gen. Stat. § 52-572n(a). However, although the CPLA creates the "exclusive remedy for claims falling within its scope," Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 471 (1989), it was "not meant to alter the substance of a plaintiff's rights or the facts that a plaintiff must prove in order to prevail." LaMontagne v. E.I. Du Pont De Nemours & Co., Inc., 41 F.3d 846, 855 (2d Cir. 1994) (LaMontagne II). As such, it "retains the plaintiff's right to allege the traditional theories of recovery along with the statutory basis for

recovery under one unified count denominated as a product liability claim."[5]

LaMontagne v. E.I. Du Pont De Nemours & Co., Inc., 834 F.Supp. 576, 587 (D. Conn. 1993) (LaMontagne I).

Because the CPLA is silent as to the elements of this cause of action for breach of warranty, "there is another statutory source upon which the plaintiff[] may rely–the Connecticut Uniform Commercial Code, Title 42a of the Connecticut General Statutes ("CUCC")." Id. at 594. An express warranty is defined under Conn. Gen. Stat. § 42a-2-313(1) as:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain, creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the good shall conform to the sample or model.

Implied warranties are defined in two provisions. Conn. Gen. Stat. § 42a-2-314 provides: "[u]nless excluded or modified as provided by section 42a-2-316, a warranty that the goods shall be merchantable is implied in a contract with respect to goods of that kind." Furthermore, Conn. Gen. Stat. § 42a-2-315 provides: "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or

---

[5]The CPLA requires that a plaintiff bring a products liability claim within "three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered." Conn. Gen. Stat. § 52-577a. However, Sears did not address the issue of the timeliness of Johnson's lawsuit, and thus any statute of limitations defense is deemed waived. See Fisher v. Vassar College, 70 F.3d 1420, 1452 (2d Cir. 1995) ("[T]he statute of limitations is an affirmative defense and can be waived.").

9

furnish suitable goods, there is unless excluded or modified under section 42a-2-316 an implied warranty that the goods shall be fit for such purpose."  Conn. Gen. Stat. § 42a-2-315.  For both express and implied warranties, a plaintiff has the burden of proving causation.  See Conn. Gen. Stat. § 52-572n(a) (setting forth product liability claims under CPLA "for harm caused by a product") (emphasis added); Blockhead, Inc. v. Plastic Forming Co., Inc., 402 F. Supp. 1017, 1024 (D. Conn. 1975) ("In a breach of warranty action, a plaintiff may recover only after demonstrating that a warranty existed, that defendant breached the warranty, and that the breach was the proximate cause of the loss sustained.").

The express warranty contained in the Heating/Cooling Estimate & Proposal provides that, although Sears is not responsible for any pre-existing conditions of equipment not being installed or replaced at the time of installation, and although Sears only arranges for the installation, "should the workmanship of any Sears arranged installation prove faulty within one year, Sears will upon notice from you, cause such faults to be corrected at no additional cost to you."  See Def.'s Stat. at Ex. E.  Johnson also claims that it was implied that Sears would install a trouble-free furnace, and that she was told that the installation would be done by an expert installer.  See Def.'s Stat. at Ex. C, Interrogatory # 15.

Notwithstanding these assertions, there is no basis on this record for Johnson's claim that Sears breached any express or implied warranties, or that any breach caused the water leaking in Johnson's basement.  As noted above, supra at 7-8, Johnson has provided no expert testimony or other evidence that would support her claim that the furnace was malfunctioning and that it caused her basement to flood.

Moreover, other items, such as the humidifier or air conditioner, were specifically excluded from the MPA, supra at 6-7. Thus, Johnson cannot claim that Sears breached any warranties as a result of those items leaking water. Additionally, Johnson admitted that Sears technicians came to her home to inspect the furnace soon after she complained about it, and that these technicians found that the furnace was working properly. Supra at 2-3, 6, 7; see also Def.'s Stat. at Ex. A, Johnson Dep. at 239. Without any evidence to the contrary, there is no material issue of fact. Thus, the court grants summary judgment to Sears on the breach of warranty claim.

### E. Lemon Law

Although Sears analyzes Johnson's "lemon law" claim as brought under Conn. Gen. Stat. § 42-179, which provides protection to consumers of motor vehicles,[6] see Def.'s Mem. in Supp. at 25-27, the court construes Johnson's "lemon law" claim as another breach of warranty or breach of contract claim based on the "Replacement and No Lemon Guarantee" clause in the MPA. See Plf.'s Mem. in Supp. at 31. Pursuant to that clause:

> if we [Sears] determine that a covered product is unrepairable due to unavailability or functional parts or technical information, you are entitled, at your option, to a comparable product replacement or we will cancel this MPA and refund the Total Price. We will, at your request, replace the product(s) covered by this MPA in the event of four (4) or more separate product failures, as determined by us, due to a defect in parts or workmanship within any continuous

---

[6]According to the Connecticut Supreme Court, "[f]or consumer buyers of new motor vehicles, the act provides supplemental remedies of repair, replacement and refund to facilitate the enforcement of express warranties made by the manufacturers of such vehicles. These supplemental remedies come into play whenever a manufacturer or authorized dealer, after a reasonable number of repair attempts, is unable substantially to conform a new vehicle to the terms of the express warranty." General Motors Corp. v. Dohmann, 247 Conn. 274, 281 (1998). There is no motor vehicle involved in this case.

> twelve (12) month period that the product(s) are covered. Product failures for these purposes must include replacement of a functional, non-expendable part, and do not include preventive maintenance, product diagnosis, customer instruction, accessory, cosmetic, or non-functional repair or replacement . . . .

See Def.'s Stat. at Ex. D, MPA at ¶ 6.

This claim must also fail for the same reasons as stated above. See supra at 7-8, 10-11. When the technician went to Johnson's home within two weeks of the purchase of the furnace, his investigation revealed that the problem was not the furnace, because an oil furnace does not have water in it. Id. at Ex. A, Johnson's Dep. at 184. That the water heater or the air conditioner may have been leaking water does not help Johnson, for the MPA specifies that it only covers the furnace and not anything connecting to the equipment. Id. at Ex. D, MPA at ¶ 10. Thus, the court grants summary judgment to Sears on this claim.

### F. Human Rights

In her Memorandum in Opposition to the Motion for Summary Judgment, Johnson claims that Sears violated her rights under the United Nation's Universal Declaration of Human Rights ("UDHR"). See Plf.'s Mem. in Opp. at 32. Essentially, Johnson is arguing that, if Sears had fixed the furnace, pipes, and duct work, and if it had treated her with dignity and respect, "it would have prevented the pain and suffering the plaintiff has experience [sic] since August 1999." Id. at 33.

However, "the UDHR is not a treaty" and does not have "the effect of domestic law." Guaylupo-Moya v. Gonzales, 423 F.3d 121, 133 (2d Cir. 2005). It is a non-binding United Nations document, and "at the time of its adoption in 1948, it was the explicit position of the United States that the Declaration 'is not a treaty . . . [or] an

international agreement' and that '[i]t is not and does not purport to be a statement of law or of legal obligation.'" Flores v. Southern Peru Copper Corp., 414 F.3d 233, 261 & n.38 (2d Cir. 2003). Moreover, it does not create a private right of action. See Ciaprazi v. Goord, 2005 WL 3531464, at *2 (N.D.N.Y. 2005). Thus, Johnson's claims under the UDHR are dismissed.

### G. Negligence

To prove her claim for negligence,[7] Johnson must establish: (1) duty; (2) breach of that duty; (3) causation; and (4) actual injury. Angiolillo v. Buckmiller, 102 Conn. App. 697, 2007 WL 2051409, at *6 (Conn. App. Ct. 2007). "'If a plaintiff cannot prove all of those elements, the cause of action fails.'" Id. (citations omitted).

"An essential element of any negligence action is the establishment of the defendant's conduct as a proximate cause of the plaintiff's injury. . . . 'The causal relation between the defendant's wrongful conduct and the plaintiff's injuries must be established in order for the plaintiff to recover damages.'" Wu v. Town of Fairfield, 204 Conn. 435, 438 (1987). The existence of the proximate cause "is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . This causal connection must be based upon more than conjecture and

---

[7]To the extent Johnson's negligence claim involves Sears' installation of the furnace, it must be brought under the CPLA. See Conn. Gen. Stat. § 52-572m(b) (including as "product liability claims" negligence claims for injury or damage caused by the installation of a product). However, to the extent Johnson's claim involves allegations of negligence based on post-sale repairs (or lack of repairs) of the furnace, this claim is not encompassed by CPLA. See Thomas v. Mazak Corp., 234 F. Supp. 2d 135, 138 (D. Conn. 2002) (citing cases). Thus, "even if a defendant is a 'product seller' within the CPLA for the purposes of one of the plaintiff's claims, it may still be a repairer, and hence not covered by the CPLA, for the purposes of other claims set forth in the complaint." Id. (citing American Nat'l Fire Ins. Co. v. A.Secondino & Sons, 832 F. Supp. 40, 42 (D. Conn.1993)).

13

surmise." Paige v. Saint Andrew's Roman Catholic Church Corp., 250 Conn. 14, 26 (1999).

Sears argues that Johnson has neither provided evidence of wrongful conduct by Sears nor has proved causation. See Def.'s Mem. in Supp. at 32-33. The court agrees, for the same reasons as stated above, see supra at 7-8, 10-11, 12, that Johnson has failed to prove that Sears' conduct caused any of the damages of which she complains.[8] Johnson has provided no expert testimony or other evidence that would support her claim that Sears was negligent by not acknowledging the furnace was leaking water and making loud noises and by not maintaining her furnace annually, or that any of Sears' actions caused the water to leak in her basement. See Def.'s Stat. at Ex. H, Plf.'s Revised Statement at ¶ 5. A Sears technician came to Johnson's home two weeks after she purchased the furnace to inspect it, and he told her that the problem was not the furnace, because an oil furnace does not have water in it. Id. at Ex. A, Johnson Dep. at 184. At that same visit, the technician fixed a non-Sears' product that was not covered by the MPA at no expense to Johnson. Additionally, Johnson admitted that no Sears technician who inspected the furnace told her the furnace was not functioning properly. Supra at 2-3, 6, 7; see also Def.'s Stat. at Ex. A, Johnson Dep. at 239. Because Johnson has failed to come forward with any evidence to support her claim of negligence by Sears in installing the furnace or inspecting it subsequent to purchase causing the water to leak in her basement, the court grants

---

[8]Indeed, in her deposition testimony, Johnson admitted that her negligence claim is based on Sears' failure to perform the contract. See Def.'s Stat. at Ex. A, Johnson Dep. at 266-67.

summary judgment to Sears on the negligence claim.

## V. CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment [**Doc. No. 127**] is GRANTED.  The Clerk is ordered to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 29th day of August, 2007.


      /s/ Janet C. Hall
Janet C. Hall
United States District Judge